UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

| United States of America, | No. 4:19-CR-06061-SAB-1 |
|---|---|
| Plaintiff, | |
| v. | EXHIBIT 13 |
| Julio Leal Parra, | |
| Defendant. | |

Supplemental Briefing re: Defendant's
Motion for Detention Review –
Exhibits

County of Franklin    $250,000.00
State of Washington    August 06, 2019

## Bill of Sale

FOR AND IN CONSIDERATION OF the sum of $250,000.00 U.S. Dollars, inclusive with all sales tax, paid by Check and Promissory Note, the receipt of which is hereby acknowledged, ROD Investments LLC - DBA Su Karne Meat Market (the "Seller") of R. 49.1(a) Richland, Washington 99354 DOES HEREBY SELL, ASSIGN, AND TRANSFER to Jesus Higareda Diaz (the "Buyer") of R. 49.1(a) Pasco, Washington 99301, the property described in the attached Exhibit (the "Property"):

The Property is being sold on an "AS IS" basis and the Seller explicitly disclaims all warranties, whether expressed or implied, including but not limited to, any warranty as to the condition of the Property. However, the Seller's above warranty disclaimer does not, in any way, affect the terms of any applicable warranties from the manufacturer of the Property.

The Buyer has been given the opportunity to inspect the Property, or alternatively, have the Property inspected. Additionally, the Buyer has accepted the Property in its existing condition.

Seller represents and warrants that Seller is the lawful owner of all Property, transferred hereunder, free and clear of all mortgages, liens or encumbrances of any nature whatsoever, and Seller shall indemnify, defend and hold Buyer harmless against such claims and demands.

In the event any dispute between the parties hereto should result in litigation or arbitration, the prevailing party shall be reimbursed for all reasonable costs in connection therewith, including, but not limited to, reasonable attorney's fees and defense costs. In no event shall either party be liable for incidental, consequential, indirect or special damages of any kind, including but not limited to loss of profit.

The terms of this Bill of Sale shall bind and inure to the benefit of the parties hereto and their respective heirs, legal representatives, successors and assigns.

The parties hereby agree to execute such other documents and perform such other acts as may be necessary or desirable to carry out the purposes of this Bill of Sale.

This Bill of Sale shall be signed by the Buyer and by the Seller's Representative, and shall be effective as of August 06, 2019.

IN WITNESS WHEREOF, the parties have executed this Bill of Sale on August 06, 2019.

By: _____    Date: 6-6-19
Julio Borquez, on behalf of ROD Investments LLC - DBA Su Karne Meat Market

R. 49.1(a)
Richland, Washington 99354

By: _____  Date: 8/6/19
Jesus Higareda Diaz

R. 49.1(a)
Pasco, Washington 99301

STATE OF WASHINGTON
COUNTY OF FRANKLIN

On 8/06/19, before me, Leonor G. Panduro, personally appeared Jesus Higareda Diaz & Julio Borquez, who personally known to me or proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she executed the same in his/her authorized capacity(ies), and that by his/her signature(s) on the instrument the person(s) or the entity upon behalf of which the person(s) acted, executed the instrument.

Witness my hand and official seal

_____
(notary signature)
Pasco, WA
My commission expires 9/20/2020

[Notary Seal: LEONOR G PANDURO, COMMISSION EXPIRES, NOTARY PUBLIC, SEPT. 20, 2020, STATE OF WASHINGTON]

- 2 door fridge Ice-o-matic
- 3 Vitamix commercial blenders
- Fruit slicing commercial
- Fruit juicer commercial
- 2 door countertop fridge
- 2 door deli fridge
- 3 compartment sink
- Hood
- Control panel
- 3 commercial deli fridges
- 1 steam table
- Band saw
- 2 meat slicers
- 2 walk-in coolers
- 1 walk-in freezer
- 2 gas water heating system
- 6 door cooler
- Vegetable fridge
- Dairy fridge
- Icysor/warren 6 door cooler 12' model #Dx6lp-12run
    - Clean and complete
    - Remote
- Ice-o-matic 400 lb. Cube ice machine with 500 lb. Model # ice0400 m- used
- 8' Hussmann open dairy/deli for produce
- Model # d5 – used,
    - Painted and refurbished
    - With ends
- 12' Hussmann open dairy/deli model # d5 used
    - Painted and refurbished
    - With ends
- 24 feet of Hussmann service neat case
- Model # smgv-12 – used
    - Panted and refurbished

## PROMISSORY NOTE

$100,000.00   Date: August 06, 2019

For value received, the undersigned Jesus Higareda Diaz of R. 49.1(a) Pasco, Washington 99301 (the "Borrower"), promises to pay to the order of ROD Investments LLC - DBA Su Karne Meat Market of R. 49.1(a) Richland, Washington 99354 (the "Lender"), the sum of $100,000.00 with no interest.

### I. TERMS OF REPAYMENT

#### A. Payments

Unpaid principal after the Due Date shown below shall accrue interest at a rate of 10% annually until paid.

The unpaid principal shall be payable in monthly installments of $10,000.00, beginning on September 06, 2019, and ending July 6, 2020, (the "Due Date") at which time the remaining unpaid balance of the Note shall be due in full.

#### B. Application of Payments

All payments on this Note shall be applied first in payment of accrued interest and any remainder in payment of principal.

#### C. Late Fee

The Borrower promises to pay a late charge of $50.00 for each installment that remains unpaid more than 5 day(s) after its Due Date. This late charge shall be paid as liquidated damages in lieu of actual damages, and not as a penalty. Payment of such late charge shall, under no circumstances, be construed to cure any default arising from or relating to such late payment.

#### D. Acceleration of Debt

If any payment obligation under this Note is not paid when due, the remaining unpaid principal balance and any accrued interest shall become due immediately at the option of the Lender.

### II. COLLECTION COSTS

If any payment obligation under this Note is not paid when due, the Borrower promises to pay all costs of collection, including reasonable attorney fees, whether or not a lawsuit is commenced as part of the collection process.

### III. DEFAULT

If any of the following events of default occur, this Note and any other obligations of the Borrower to the Lender, shall become due immediately, without demand or notice:

1) the failure of the Borrower to pay the principal and any accrued interest when due;

2) the liquidation, dissolution, incompetency or death of the Borrower;

3) the filing of bankruptcy proceedings involving the Borrower as a debtor;

4) the application for the appointment of a receiver for the Borrower;

5) the making of a general assignment for the benefit of the Borrower's creditors;

6) the insolvency of the Borrower;

7) a misrepresentation by the Borrower to the Lender for the purpose of obtaining or extending credit; or

8) the sale of a material portion of the business or assets of the Borrower.

## IV. SEVERABILITY OF PROVISIONS

If any one or more of the provisions of this Note are determined to be unenforceable, in whole or in part, for any reason, the remaining provisions shall remain fully operative.

## V. MISCELLANEOUS

All payments of principal and interest on this Note shall be paid in the legal currency of the United States. The Borrower waives presentment for payment, protest, and notice of protest and demand of this Note.

No delay in enforcing any right of the Lender under this Note, or assignment by Lender of this Note, or failure to accelerate the debt evidenced hereby by reason of default in the payment of a monthly installment or the acceptance of a past-due installment shall be construed as a waiver of the right of Lender to thereafter insist upon strict compliance with the terms of this Note without notice being given to Borrower. All rights of the Lender under this Note are cumulative and may be exercised concurrently or consecutively at the Lender's option.

This note may not be amended without the written approval of the holder.

## VI. GOVERNING LAW

This Note shall be construed in accordance with the laws of the State of Washington.

## VII. SIGNATURES

This Note shall be signed by Jesus Higareda Diaz, and Julio Borquez on behalf of ROD Investments LLC - DBA Su Karne Meat Market.

[SIGNATURE PAGE FOLLOWS]

IN WITNESS WHEREOF, this Agreement has been executed and delivered in the manner prescribed by law as of the date first written above.

Signed this 6th day of August, 2019 at Pasco, WA

Borrower:
Jesus Higareda Diaz

By: _____
Jesus Higareda Diaz

Lender:
ROD Investments LLC - DBA Su Karne Meat Market

By: _____  8-6-19
Julio Borquez

STATE OF WASHINGTON
COUNTY OF FRANKLIN

On 8/06/19, before me, Leonor G. Panduro personally appeared Jesus Higareda Diaz & Julio Borquez, who personally known to me or proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she executed the same in his/her authorized capacity(ies), and that by his/her signature(s) on the instrument the person(s) or the entity upon behalf of which the person(s) acted, executed the instrument.

Witness my hand and official seal

_____
(notary signature)
Pasco, WA
My Commission expires 9/20/2020

[Notary Seal: LEONOR G PANDURO, COMMISSION EXPIRES, NOTARY PUBLIC, SEPT. 20, 2020, STATE OF WASHINGTON]

## Asset Purchase Agreement

THIS AGREEMENT is made on August 06, 2019 between ROD Investments LLC - DBA Su Karne, with its principal place of business at R. 49.1(a)　　　　　　　　　Richland, Washington, 99354 hereinafter the "Seller" and Jesus Higareda Diaz, with offices at R. 49.1(a) Avenue, Pasco, Washington, 99301 hereinafter the "Buyer".

IN CONSIDERATION of the mutual covenants and agreements hereinafter set forth, and for other good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged, the parties agree as follows:

1. Purchase of Assets.
Seller shall sell to Buyer and Buyer shall purchase from Seller, on the terms and conditions set forth in this Agreement, all of the owned property of ROD Investments LLC - DBA Su Karne as determined by a complete inventory and accounting to be taken; all of the fixtures, equipment, and other tangible assets of ROD Investments LLC - DBA Su Karne as shown on the attached inventory (Exhibit A);

This purchase and sale is limited to the assets specifically set forth in this Agreement, and Buyer shall not assume any liabilities of ROD Investments LLC - DBA Su Karne or its individual shareholders, directors, officers, affiliates, creditors, parent or subsidiary companies, if any.

2. Purchase Price.
The purchase price for the assets is $250,000.00.

3. Payment of Purchase Price.
On execution of this Agreement, Buyer shall pay the sum of $88,988.00 and transfer ownership of 2018 F-150 Ford Lighting VIN 1FTMF1C59JKC59993 (FMV $50,000.00) WITH 3,917 miles. $10,000.00 will be used to pay outstanding balances of company state payroll taxes (Department of Labor & Industries and Employment Security Department) and $1,012.00 for rent from 8/1 – 8/6. The remainder of the purchase price, $100,000.00, Buyer will sign a promissory note on or before the date set for consummation of the purchase and sale of the Business Assets.

4. Closing and Escrow.
a.       The Closing date shall be August 06, 2019, provided there are no unforeseen delays. Closing shall not be later than 10 calendar days after the designated closing date, unless a further extension is agreed upon in writing between the Buyer and Seller. If any of the parties intend to have a title company or escrow agent close the transaction, the parties shall mutually agree upon such company or agent with costs to be split between parties. The costs of Escrow are separate and apart from the Purchase Price. Both the Buyer and Seller shall submit all documentation and other information requested by title company/escrow agent needed to close the transaction. The parties shall fix a date and time with the title company/escrow agent to close the transaction.
b.       On the Closing date the inventory, equipment, and fixtures to be transferred will be located at 402 N Ely Street Lot B, Kennewick, Washington, 99336 and will not be removed without the written consent of the Buyer.

5. Representations by Seller.

Seller covenants and represents:

a. That Seller is the sole owner of the Assets with full right to sell or dispose of it as Seller may choose, and no other person has any claim, right, title, interest, or lien in, to, or on the Business or Assets.

b. That Seller has no undischarged obligations affecting the Assets being sold under this Agreement.

c. That there are presently and will be at the time of closing, no liens or security interests against the property and Assets being transferred herein.

d. Consents. No consent from or other approval of a governmental entity, board of directors, or any other person is necessary in connection with the execution of the Agreement, or the consummation by Seller of the Assets by Buyer in the manner previously conducted by Seller.

e. Inventory. The Inventory is merchantable and fit for its intended use and is free of any material defects in workmanship. The finished goods Inventory is of a type, quantity, and quality usable and salable in the ordinary course of business.

f. Payment of Taxes. Seller represents and warrants that Seller has paid, or will arrange for the full payment of, all taxes owed by Seller on account of the Business.

g. Insurance. At the time of signing this Agreement, the Seller will provide the Buyer with a copy of the most current insurance policy covering the Business and/or the Assets sold. Buyer has the option to assume the insurance policy subject to insurance company approval.

h. Licenses. Permits and Consents. There are no licenses or permits currently required by the Seller for the satisfaction of the sale of Assets or this Agreement, or Seller has obtained the proper licenses or permits in order to effectuate this Agreement.

i. Litigation. There are no actions, suits, proceedings, or investigations pending or, to the knowledge of the Seller, threatened against or involving Seller or brought by Seller or affecting any of the purchased property at law or in equity or admiralty or before or by any federal, state, municipal, or other governmental department, commission, board, agency, or instrumentality, domestic or foreign, nor has any such action, suit, proceeding, or investigation been pending during the 24-month period preceding the date hereof; and Seller is not operating its business under or subject to, or in default with respect to, any order, writ, injunction, or decree of any court of federal, state, municipal, or governmental department, commission, board, agency, or instrumentality, domestic or foreign.

j. Compliance with Laws. To the best of its knowledge, Seller has complied with and is operating its business in compliance with all laws, regulations, and orders applicable to the business conducted by it, and the present uses by the Seller of the purchased property do not violate any such laws, regulations, and orders. Seller has no knowledge of any material present or future expenditures that will be required with respect to any of Seller's facilities to achieve compliance with any present statute, law, or regulation, including those relating to the environment or occupational health and safety.

k. Disclosure. No representation or warranty by the Seller contained in this Agreement, and no statement contained in any certificate or other instrument furnished or to be furnished to Buyer pursuant hereto, or in connection with the transactions contemplated hereby, contains or will contain any untrue statement of a material fact or omits or will omit to state any material fact that is necessary in order to make the statements contained therein not misleading.

l.  Liabilities. Seller has as of the purchase date and shall have on the closing date no liabilities of any kind whatsoever, contingent or otherwise.

m.  Environmental Affidavit. Seller will provide an affidavit certifying that there presently is not, nor ever has been, any dumping or storage of toxic, Superfund, or hazardous wastes on the premises.

6. Indemnification Provisions.

It is agreed by and between the parties that the Seller shall jointly and severally indemnify and hold Buyer and its assigns harmless from any and all claims of any nature whatsoever, including without limitation:

a.  Tort claims; Any creditor claims; and

b.  Any claims that may be made hereinafter on account of federal and state franchise taxes, Social Security taxes, sales taxes, unemployment taxes, and all other taxes of whatever nature or form on account of the operation of Business ending on and accruing up to the closing date.

c.  Any claims for wages, vacation, sick pay, or fringe benefits claimed by Seller's employees for periods prior to the closing date. Seller shall furnish Buyer with a list of all Business's employees, full- and part-time, their current rate of compensation, and fringe benefits, for purposes of disclosure. Buyer makes no warranties or guaranties regarding employment of any of Seller's employees.

7. Covenants of Seller.

The Seller covenants with the Buyer as follows:

a.  The Bill of Sale to be delivered at the closing date will transfer all the Assets enumerated in Exhibit A free and clear of all encumbrances and will contain the usual warranties;

b.  Seller assumes all risk of loss, damage, or destruction to the Assets subject to this Agreement until the closing. If the Assets are damaged or lost prior to Closing such that their valuation is affected, Seller agrees to negotiate in good faith a reasonable reduction in the Payment Purchase Price to account for the lost value of the Assets.

8. Inventory of Assets.

A complete inventory of the stock in trade, merchandise, and other tangible assets to be sold and purchased under this Agreement has already been made. Operation of the Business will be suspended immediately prior to the taking of the inventory and will remain suspended until after the closing, unless doing so would cause a depreciation of any Asset(s). Any Asset(s) which would end up losing value, or otherwise becoming encumbered, based on suspension of operation, may remain in use until the Asset(s) can be transferred to Buyer with the purpose of retaining the maximum value until the execution and complete satisfaction of this Agreement.

9. Bulk Sales Compliance.

The Seller shall comply with applicable bulk sales legislation.

10. Schedules.

Schedules and other documents attached or referred to in this Agreement are an integral part of this Agreement.

11. Entire Agreement.

This Agreement constitutes the sole and only agreement between Buyer and Seller respecting the Business or the sale and purchase of it. This Agreement correctly sets forth the obligations of Buyer and Seller to each other as of its date. Any additional agreements or representations respecting the Business or its sale to Buyer not expressly set forth in this Agreement are null and void, unless otherwise required by law. Both parties agree to waive rights as to any conflicting laws which may nullify this Agreement to the full extent allowable by law.

12. Conditions Precedent of Buyer.

The obligations of the Buyer hereunder are subject to the conditions that on or prior to the closing date:

a. Representations and Warranties True at Closing. The representations and warranties of the Seller contained in the Agreement or any certificate or document delivered pursuant to the provisions hereof or in connection with the transactions contemplated hereby shall be true on and as of the closing date as though such representations and warranties were made at and as of such date, except if such representations and warranties were made as of a specified date and such representations and warranties shall be true as of such date.

b. Seller's Compliance with Agreement. The Seller shall have performed and complied with all agreements and conditions required by this Agreement to be performed or complied with by it prior to or at the closing of the Agreement.

c. Resolutions and Seller's Certificate. The Seller shall have delivered to the Buyer copies of the resolutions of the board of directors of the Seller authorizing the transactions contemplated herein, with such resolutions to be certified to be true and correct by its secretary or assistant secretary, together with a certificate of an officer of the Seller, dated the closing date, certifying in such detail as the Buyer may request to the fulfillment of the conditions specified in subparagraphs (a) and (b) above.

d. Injunction. On the closing date, there shall be no effective injunction, writ, preliminary restraining order, or any order of any nature issued by a court of competent jurisdiction directing that the transactions provided for herein or any of them not be consummated as herein provided.

e. Approval of Proceedings. All actions, proceedings, instruments, and documents required to carry out this Agreement, or incidental thereto, and all other related legal matters shall have been approved by counsel for the Buyer.

f. Casualty. The purchased Asset(s) or any substantial portion thereof shall not have been adversely affected in any material way as a result of any fire, accident, flood, or other casualty or act of God or the public enemy, nor shall any substantial portion of the purchased property have been stolen, taken by eminent domain, or subject to condemnation. If the Closing occurs hereunder despite such casualty as a result of the waiver of this condition by Buyer, the Seller shall assign or pay over to the Buyer the proceeds of any insurance or any condemnation proceeds with respect to any casualty involving the purchased property that occurs after the date hereof.

g. Adverse Change. There shall have been between the purchase date and the closing date no material adverse change in the assets or liabilities or in the condition, financial or otherwise, or in the business, properties, earnings, or net worth of Seller.

13. Arbitration.

In the event the parties are not able to resolve any dispute between them arising out of or concerning this Agreement, or any provisions hereof, whether in contract, tort, or otherwise at law or in equity for damages or any other relief, then such dispute shall be resolved only by final and binding arbitration pursuant to the Federal Arbitration Act and in accordance with the American Arbitration Association rules then in effect, conducted by a single neutral arbitrator and administered by the American Arbitration Association in a location mutually agreed upon by the parties. The arbitrator's award shall be final, and judgment may be entered upon it in any court having jurisdiction. In the event that any legal or equitable action, proceeding or arbitration arises out of or concerns this Agreement, the prevailing party shall be entitled to recover its costs and reasonable attorney's fees. The parties agree to arbitrate all disputes and claims in regards to this Agreement or any disputes arising as a result of this Agreement, whether directly or indirectly, including Tort claims that are a result of this Agreement. The parties agree that the Federal Arbitration Act governs the interpretation and enforcement of this provision. The entire dispute, including the scope and enforceability of this arbitration provision shall be determined by the Arbitrator. This arbitration provision shall survive the termination of this Agreement.

_____(Buyer Init.)          _____(Seller Init.)

## 14. Costs and Expenses.

Except as expressly provided to the contrary in this Agreement, each party shall pay all of its own costs and expenses incurred with respect to the negotiation, execution and delivery of this Agreement and the exhibits hereto.

## 15. Miscellaneous Provisions.

a.      Applicable Law. This Agreement shall be construed under and in accordance with the laws of the State of Washington.

b.      Parties Bound. This Agreement shall be binding on and inure to the benefit of the parties to this Agreement and their respective heirs, executors, administrators, legal representatives, successors and assigns as permitted by this Agreement.

c.      Legal Construction. This Agreement shall be construed as to effectuate the intended purpose of the Agreement. In the event any one or more of the provisions contained in this Agreement shall for any reason be held invalid, illegal, or unenforceable in any respect, this Agreement shall be modified to otherwise effectuate the sale under the original intentions of the Parties. This may include striking the invalid, illegal, or unenforceable provision as if they had never been contained in this Agreement, or modifying the invalid, illegal or unenforceable provisions to make them compliant without modifying the original purpose of the Parties.

d.      Amendments. This Agreement may be amended by the Parties only by a written agreement.

e.      Attorneys' Fees. Should any arbitration or litigation be commenced between the parties to this Agreement concerning the rights and duties of either party in relation to the Business or this Agreement, the prevailing party in the arbitration or litigation shall be entitled to (in addition to any other relief that may be granted) a reasonable sum and attorneys' fees in the arbitration or litigation, which sum shall be determined by the court or other person presiding in the arbitration or litigation or in a separate action brought for that purpose.

f.  Signatories. This Agreement shall be executed on behalf of ROD Investments LLC - DBA Su Karne by Julio Borquez and by Jesus Higareda Diaz. The Agreement shall be effective as of the date first written above.

Seller:
ROD Investments LLC - DBA Su Karne

By: _____  Date: 8-6-19
Julio Borquez

Buyer:

By: _____  Date: 8/6/19
Jesus Higareda Diaz

STATE OF WASHINGTON
COUNTY OF FRANKLIN

On 8/06/19, before me, Leonor G. Panduro personally appeared, Jesus Higareda Diaz & Julio Borquez, who personally known to me or proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she executed the same in his/her authorized capacity(ies), and that by his/her signature(s) on the instrument the person(s) or the entity upon behalf of which the person(s) acted, executed the instrument.

Witness my hand and official seal

_____
(notary signature)
Pasco, WA
My Commission Expires 9/20/2020

[Notary Seal: LEONOR G PANDURO, NOTARY PUBLIC, STATE OF WASHINGTON, COMMISSION EXPIRES SEPT. 20, 2020]

- 2 door fridge Ice-o-matic
- 3 Vitamix commercial blenders
- Fruit slicing commercial
- Fruit juicer commercial
- 2 door countertop fridge
- 2 door deli fridge
- 3 compartment sink
- Hood
- Control panel
- 3 commercial deli fridges
- 1 steam table
- Band saw
- 2 meat slicers
- 2 walk-in coolers
- 1 walk-in freezer
- 2 gas water heating system
- 6 door cooler
- Vegetable fridge
- Dairy fridge
- Icysor/warren 6 door cooler 12' model #Dx6lp-12run
  - Clean and complete
  - Remote
- Ice-o-matic 400 lb. Cube ice machine with 500 lb. Model # ice0400 m- used
- 8' Hussmann open dairy/deli for produce
- Model # d5 – used,
  - Painted and refurbished
  - With ends
- 12' Hussmann open dairy/deli model # d5 used
  - Painted and refurbished
  - With ends
- 24 feet of Hussmann service neat case
- Model # smgv-12 – used
  - Panted and refurbished

| | |
|---|---|
| **SM El PUEBLO MARKET** *Un pedacito de México cerca de ti.* (509) 547-8770 720 North 20th Avenue • Pasco, WA 99301 | 34343 COMMUNITY FIRST BANK 4720 BROADMOOR BLVD PASCO, WA 99301 98-846/1251 08/06/19 JHP |

PAY TO THE ORDER OF **Julio Cesar Borquez**  $ **88,988.00**

eighty eight thousand nine hundred eighty eight —— 00/100 DOLLARS

SUPERMEX, LLC

MEMO **PAGO SU KARNE**

⑇034343⑇ R. 49.1(a) 2420⑇