Bevan J. Maxey
Attorney for Defendant
Maxey Law Office, PLLC
1835 W. Broadway Ave.
Spokane, WA 99201
Phone: (509) 326-0338

# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF WASHINGTON

| United States of America, | No. 4:19-CR-06061-SAB-1 |
|---|---|
| Plaintiff, | Second Supplemental Briefing re: Defendant's Motion for Detention Review (ECF No. 87) |
| v. | |
| Julio Leal Parra, | *January 6, 2020 at 11 a.m.* |
| Defendant. | *Magistrate Judge Dimke* |

Second Supplemental Briefing re:
Defendant's Motion for Detention
Review | pg. 1

## I. Introduction

Defendant, Mr. Julio Parra, respectfully requests the Court consider his second supplemental briefing regarding his motion for pretrial release, and order his pretrial release. The Court should order Mr. Parra's release on a bond of $150,000 secured by property, and under conditions recommended by U.S. Probation, ECF No. 45, with the additional pretrial release condition that Mr. Parra not be permitted to leave or be removed from the Eastern District of Washington.

## II. Background

Mr. Parra moved for pretrial release on November 19, 2019. ECF No. 87. Then, on November 26, 2019, counsel moved the Court for an order substituting counsel, ECF No. 98, and the Court granted the motion on December 2, 2019, ECF No. 100. After changing counsel, Mr. Parra moved the Court for leave to file sealed supplemental briefing pertaining to the issue of pretrial release on December 11, 2019, ECF No. 132, however his motion to seal was ultimately denied because it was too vague, ECF No. 146.[1] Nevertheless, the Government

---

[1] Along with this second supplemental briefing, and for completeness of the record, Mr. Parra has filed his first supplemental briefing with the appropriate redactions pursuant to Fed. R. Crim. P. 49.1(a) rather than pursuing his motion to seal those materials.

Second Supplemental Briefing re:
Defendant's Motion for Detention
Review | pg. 2

filed its response to Mr. Parra's proposed sealed briefing on December 18, 2019, and a pretrial release hearing was held on December 19, 2019 before Magistrate Judge Dimke, ECF No. 148.

At the hearing, there were discrepancies regarding the amount of proceeds realized from sales of Mr. Parra's real estate. Mr. Parra's brief, submitted through counsel, erred by: (1) depicting the purchase price of Mr. Parra's former Pasco, Washington home as $21,500, *see* ECF No. 154-5; (2) not identifying the gross sale proceeds from the sale of the commercial building; (3) inaccurately relying on public records to identify values for Mr. Parra's real estate transactions; (4) inaccurately characterizing the transfer of "Su Karne" from Mr. Parra to his son, Mr. Borquez, as a sale, when it was actually a gift; and (5) failing to trace proceeds from the sales of real estate and a business so that the Court could assess Mr. Parra's current financial situation.

The Court continued the pretrial release hearing, ECF No. 149, and asked Mr. Parra to clarify his assets. This briefing is intended to clarify Mr. Parra's assets, and provide further outstanding information to the Court.

### III. Discussion

**A. Proposed property collateral**

*1. Mr. Parra's Benton City, Washington home*

Mr. Parra purchased the Benton City, Washington home for $224,000 in August 2017. *See* Exhibit 20. He paid $500 in earnest money and $10,000 as an interest-balloon payment to Ms. Suzanne Carnevalli as trustee, and $10 to Mr.

Jeffrey Truman as seller, to obtain possession of the home. *Id.* Mr. Parra only paid $10 to Mr. Truman because Mr. Parra assumed the entire debt obligation of $224,000 owed to Ms. Carnevalli on the seller-financed sale of the property she previously made to Mr. Truman. *Id.*; see also ECF Nos. 154-2 and -3. Mr. Parra owes a remaining balance of $209,040.75. *See* Exhibit 21 (account ledger for house payments). The Benton City home is worth $295,000, *see* ECF No. 154-4, and Mr. Parra has $85,959.12 of equity in the home.

*2. Mr. Parra's parents' home in Kennewick, Washington*

Mr. Parra's parents purchased their home in Kennewick, Washington in December 2017 for $91,252. *See* Exhibit 37 (appraisal). It is currently valued at $200,000. *Id.* They owe a remaining balance of $87,359.62 on their mortgage. *See* Exhibit 38 (receipt). Thus, they have $112,640.38 of equity in their home.

**B. Mr. Parra's former Pasco, Washington home**

Mr. Parra purchased his home in Pasco, Washington in September 2003 for $91,577. *See* Exhibit 22 (2003 settlement statement). He paid $21,500 for the land, $53,075.58 for the manufactured home placed on the land, $16,742.81 in settlement costs, and $33.30 in county taxes. *Id.* He borrowed $88,000 from Wells Fargo to pay for this house. *Id.*; *see also* Exhibit 23 (note); and Exhibit 24 (deed of trust).

Mr. Parra sold this property in April 2018 for $146,000. *See* Exhibit 25 (2018 settlement statement). After fees and costs, and payment of the

outstanding mortgage balance of $63,889.58 to Wells Fargo, Mr. Parra received a net payment of **$71,707.63** from the sale of this home. *Id.*

**C. The commercial building in Kennewick, Washington**

Mr. Parra purchased the commercial building in December 2009. He purchased the building under a real estate contract for a total purchase price of $250,000 ($245,000 for the real estate and $5,000 for equipment). *See* Exhibit 26 (real estate contract for purchase of commercial building). Under the real estate contract, Mr. Parra paid $3,397 up-front (price of closing costs), received a rent credit of $20,000, and owed monthly installments of $2,564.04 on the remaining $230,000 debt. *Id.* at "Closing Statement."

Mr. Parra sold the commercial building in January 2018 for $340,000. *See* Exhibit 27 (seller's estimated closing statement). After paying the remainder of his debt obligation under the real estate contract from purchasing the building as well as other fees and costs, Mr. Parra received a net payment of **$81,484.18** from the sale of the commercial building and financed $140,000 under a real estate contract between Mr. Parra and the buyers. *Id.* (the *estimated* closing statement identifies net payment of $81,626.35); Exhibit 28 (real estate contract for sale of commercial building); *but see* Exhibit 30 (bank statement showing *actual* net payment of $81,484.18 on January 24, 2018).

Then, in December 2018, Mr. Parra sold his right to payment under the real estate contract from the sale of the commercial building and received a net payment of **$102,032.10**. *See* Exhibit 29 (closing statement and accompanying

documents for the sale of the commercial building real estate contract); *see also* Exhibit 31 (bank statement showing deposit of $102,032.10 on December 28, 2018).

**D. Proceeds from the real estate sales went towards opening "Su Karne" meat market.**

*1. Proceeds from the Pasco home and the commercial building sale (not including the sale of the note)*

After receiving the payment of $81,484.18 from the sale of the commercial building in January 2018, Mr. Parra transferred $84,000 from his personal checking account to his personal savings account. *See* Exhibit 29 (transaction on January 26, 2018). He then transferred **$119,500** from his personal savings account into a new account for "Rod Investments," which ran "Su Karne" meat market. *See* Exhibit 32 (bank statement for "Rod Investments" showing January 31, 2018 transfers of $114,500 to new checking account and $5,000 to new savings account).

The **$71,707.63** obtained from the sale of the home in Pasco, Washington were deposited directly into "Rod Investments'" bank account on April 27, 2018. *See* Exhibit 33 (April 2018 bank statement for "Rod Investments" *and* check images for deposits).

Thus, Mr. Parra contributed a total of **$191,207.63** towards starting "Su Karne" in the beginning of 2018. Of those moneys, $153,191.81 were direct proceeds of the sales of the Pasco home and the commercial building, and $38,015.82 came from Mr. Parra's savings. *See* Exhibit 30.

Mr. Parra's contribution moneys were then spent opening and operating the meat market. *See* Exhibit 34 (representative sample of moneys paid).[2] He paid to renovate the business' location so it could house a meat market, he purchased equipment for the business, he purchased merchandise for the business, and he paid business expenses with his contribution moneys. *Id*. In sum, all of Mr. Parra's $191,207.63 contribution moneys were spent opening and operating "Su Karne."

*2. Proceeds from the sale of the commercial building real estate contract*

Mr. Parra received $102,032.10 from the sale of the commercial building real estate contract. *See* Exhibit 31. Those funds were deposited in his personal checking account on December 28, 2018. *Id*. Those funds were then used to cover Mr. Parra's living expenses over the course of the next year until his arrest in this matter, as Mr. Parra was no longer operating his upholstery business and eventually withdrew from his role at the meat market.

///

///

---

[2] Mr. Parra has provided 698 check images from "Su Karne's" account to counsel. Rather than produce the same to the Court, Mr. Parra is providing a representative sample to the Court that shows the costs expended towards opening and operating the meat market and confirm his contribution moneys were spent and depleted.

Second Supplemental Briefing re:
Defendant's Motion for Detention
Review | pg. 7

**E. Tracing of proceeds from the sale of "Su Karne" meat market**

Mr. Parra gifted "Su Karne" to his son, Mr. Julio Borquez in July 2019. He legitimately transferred the meat market to his son because the business was failing and he wanted to provide his son, who was a co-owner of the business, the opportunity to turn it around or sell it.

Mr. Borquez ultimately decided to sell the business. He sold the business in August 2019 for $250,000. *See* ECF No. 154-13. When Mr. Borquez sold the business, he received a net payment of **$88,988**. *Id*. The buyer also paid $10,000 towards the business' outstanding payroll taxes to Washington State Department of Labor and Industries and Washington State Employment Security Department, and $1,012 in prorated rent. *Id*. As for the remaining $150,000 of the purchase price, the buyer transferred ownership of the 2018 Ford F-150 Ford Lightning truck, which the parties valued at $50,000, and the buyer financed the remaining $100,000 purchase obligation directly with Mr. Borquez, agreeing to make ten monthly installment payments of $10,000. *Id*.

Mr. Borquez spent the $88,988 he received from the sale of the meat market covering debts and living expenses for the family. He paid $20,562 to the Washington Department of Revenue. *See* Exhibit 35 (Dept. of Revenue Receipts). He paid $21,926.27 to the Washington Department of Labor and Industries. *See* Exhibit 36. Mr. Borquez further indicates he covered two of the family's house payments at a cost of $3,342 once his dad was arrested in this matter, and covered the remaining balance on his former apartment at a cost of $4,590. He

also indicates he paid $4,074 to cover debts owed to equipment lessors and vendors of the meat market, and $1,077 to the Washington Department of Employment Security. In sum, the $88,988 received from the sale of the meat market has been spent covering debts from the meat market and family expenses, and Mr. Borquez expects to receive another six instalment payments of $10,000 from the sale of the meat market.

## IV. Conclusion

In summary, Mr. Parra respectfully requests the Court order his pretrial release in this matter. His release should be secured by a property bond of $150,000 (the combined sum of the equity in Mr. Parra's Benton City home and his parents' Kennewick home is $198,599.50). The Court should allow his pretrial release to be secured by a property bond, because Mr. Parra does not have the funds to post a cash bond, and because the proceeds from the sales of real estate and the meat market have been depleted, as outlined above. For these and the reasons outlined above and in the first supplemental briefing provided by Mr. Parra, ECF No. 154, the Court should order Mr. Parra's pretrial release.

Respectfully submitted this 1st day of January 2020.

MAXEY LAW OFFICE PLLC

*s/ Bevan J. Maxey*
**Bevan J. Maxey**, WSBA No. 13827
Attorney for Defendant, Julio Leal Parra

Second Supplemental Briefing re:
Defendant's Motion for Detention
Review | pg. 9

**Certificate of Service**

I hereby certify that on January 1, 2020, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF System which will send notification of such filing to the following, and/or I hereby certify that I have mailed by U.S. Postal Service the documents to the following non-CM/ECF participant(s):

**Stephanie A. Van Marter**
Assistant U.S. Attorney
P.O. Box 1494
Spokane, WA 99210-1494

*s/ Connor Jepson*
Connor Jepson
Associate Attorney at Maxey Law Office, PLLC

Second Supplemental Briefing re:
Defendant's Motion for Detention
Review | pg. 10